IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CAZEMBIE S. BASKIN, | Case No. 1:22-CV-00124 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| UNITED STATES OF AMERICA, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter is before the Court upon the Partial Motion to Dismiss filed by Defendant United States of America ("Defendant") on September 6, 2022 ("Defendant's Motion"). (Doc. No. 12.) In Defendant's Motion, Defendant sought dismissal of Plaintiff's allegations involving the medical care provided to Plaintiff at FCI Milan, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Id.*) Plaintiff Cazembie S. Baskin ("Plaintiff") did not file a response or brief in opposition to Defendant's Motion, and on November 3, 2022, the Court issued a Memorandum Opinion and Order denying in part and granting in part Defendant's Motion. (Doc. No. 18.)  Specifically, the Court concluded that to the extent Defendant's Motion sought dismissal of Plaintiff's allegations involving the medical care provided to Plaintiff at FCI Milan pursuant to Fed. R. Civ. P. 12(b)(1), it was denied; but pursuant to Fed. R. Civ. P. 12(b)(6), it was granted. (*Id.*)

During the Case Management Conference that took place on November 28, 2022, Plaintiff informed the Court that he had never received a copy of Defendant's Motion. (Doc. No. 21.)  With no objection by Defendant, the Court allowed Plaintiff until January 6, 2023, to file an opposition to Defendant's Motion. (*Id.*)  Plaintiff then filed a "Reply Brief" in opposition to Defendant's Motion

on January 6, 2023 ("Plaintiff's Opposition"). (Doc. No. 23.) Defendant filed its Reply in Support of its Motion on January 20, 2023 ("Defendant's Reply"). (Doc. No. 25.)

For the following reasons, the Court's previous decision denying in part and granting in part Defendant's Motion (Doc. No. 18), remains unchanged.

**I.    Analysis[1]**

In its Motion, Defendant argues that to the extent Plaintiff is attempting to litigate issues that took place while Plaintiff was housed at FCI Milan from 2015 to 2017, Plaintiff did not file an administrative tort claim as to those issues, and thus Plaintiff did not administratively exhaust that claim as required under the FTCA. (Doc. No. 12-1 at 6-7.) Specifically, Defendant points to the language in Plaintiff's administrative tort claim form that identifies the dates allegedly negligent care was provided to Plaintiff as being between 2019 and 2020, and that the claim at issue was due to "BOP's failure to follow the medical directives of the Cleveland Clinic." (Doc. No. 12-2, PageID # 74.) Defendant argues that "[t]he care provided by FCI Milan pre-dated Plaintiff's evaluation by the Cleveland Clinic," and thus, the care provided by FCI Milan did not take place during the time period covered by the administrative claim. (Doc. No. 12-1 at 6.) Defendant further argues that any attempt by Plaintiff to administratively exhaust his claims as they relate to care Plaintiff received at FCI Milan is now time-barred, "and indeed, would have been time-barred at the time he originally filed his tort claim in October 2020." (*Id.* at 7.)

The Court previously agreed with Defendant, finding that (1) Plaintiff failed to administratively exhaust his FTCA claim to the extent it related to the care Plaintiff received while

---

[1] The Court incorporates the relevant background and standard of review as set forth in the Court's Memorandum Opinion and Order dated November 3, 2022 (Doc. No. 18), as if written herein.

at FCI Milan, and (2) Plaintiff is time barred from seeking to administratively exhaust his claims regarding care he received at FCI Milan from 2017 to 2019. (Doc. No. 18 at 12-13.)

In his Opposition, Plaintiff contends that the "negligent acts enclosed within his Form 95 Tort Claim relate to negligent acts committed while at FCI-Milan and at FCI-Elkton" because the Form 95 Tort Claim is "labeled against the Bureau of Prisons in general." (Doc. No. 23, at 2-3.) Plaintiff admits that "negligent acts committed while at FCI-Milan should have been lodged [sic] with the North Central Regional Office," but Plaintiff argues that "the Northeast Regional Office had a duty to inform [him] to file any negligent acts as they relate to FCI-Milan with the North Central Regional Office or simply reject his Form 95 Tort Claim altogether for that reason." (*Id.*) Plaintiff further argues that his injury is a continuing one, and thus, the alleged acts are not time-barred. (*Id.*)

In its Reply, Defendant argues that "Plaintiff's tort claim did not provide the United States with notice adequate to enable investigation of a claim that staff at FCI Milan failed to diagnose and treat Plaintiff's liver condition before October of 2019, when Plaintiff was allegedly evaluated at the Cleveland Clinic." (Doc. No. 25 at 2.) Defendant argues that while "Plaintiff makes passing reference to CT scans from 2015 to 2016, and an undated reference to the Bureau of Prisons' failure 'to follow-up or treat the issue,' nowhere in the form does Plaintiff allege that staff at FCI Milan committed malpractice." (*Id.* at 3.) Further, Defendant argues that because more than two years have passed since Plaintiff knew of his injury and of his injury's alleged cause, "[a]ny attempt to administratively exhaust FCI Milan issues are now time-barred." (*Id.* at 5.)

Under the FTCA, before a plaintiff may file a suit against the United States, the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "In

3

order for a person to file a tort claim under the FTCA, it is required that he 1) give written notice of a claim sufficient to enable the agency to investigate the claim and 2) place a value (or 'sum certain') on the claim." *Glarner v. United States, Dep't of Veterans Admin.*, 30 F.3d 697, 700 (6th Cir. 1994). "[A] plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Smith v. United States*, 2021 WL 206355, at *8 (E.D. Ky. Jan. 20, 2021) (quoting *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003)).

Plaintiff's argument does nothing to change the Court's previous holding that Plaintiff failed to present a claim to the BOP as to any alleged negligence that occurred at FCI Milan. While Plaintiff states that his tort claim form is "labeled against the Bureau of Prisons in general," such language is insufficient to provide the United States with notice adequate to enable investigation of a negligence claim against the staff at FCI Milan. *See Smith*, 2021 WL 206355, at *8 ("While Smith's medical negligence claim does relate to the treatment for his injuries sustained in the April 2019 incident, it is clearly a different claim, based on a different theory of negligence and involving different parties and applicable policies."); *Ramirez-Carlo v. United States*, 496 F.3d 41, 47 (1st Cir. 2007) (holding that when a claim only included facts and reference to care the veteran received on October 22 and 23, 1996, the government was not put on notice of any malpractice occurring a year prior); *Roma*, 344 F.3d at 363 ("[T]he allegation that an NAES Lakehurst firefighter negligently caused Roma's injuries by ordering him to remove his [mask] did not provide any notice to the United States that it not only had to investigate the way the firefighting was handled by federal employees, but that it also had to engage in a much broader investigation concerning whether the negligence of other, non-firefighter, federal employees may have contributed to the start of the fire itself.").

Like the claims in *Smith*, Plaintiff's claims against FCI Milan and FCI Elkton, while relating to treatment for the same injury, are separate claims based on different facts and different parties. *See Smith*, 2021 WL 206355, at *8. In his administrative tort claim form, Plaintiff only presented a claim to the BOP for the care he received from December 2019 through September 2020, while in the custody of FCI Elkton. (*See* Doc. No. 12-2, PageID # 74; *see also* Doc. No. 7-1.) While Plaintiff's tort claim form does note that "[i]n 2015-2016, CT scans were conducted by the BOP identifying multiple cysts and lesions on [his] liver, however the BOP failed to follow-up or treat the issue," those dates are not included in the "DATE AND DAY OF ACCIDENT" portion of the form, nor does Plaintiff state that any action or inaction from 2015 or 2016 was considered part of the "NATURE AND EXTENT" of his injury. (Doc. No. 12-2, PageID # 74.) Rather, this information was only listed in the "Basis of Claim" section of the form, and the Court construes this reference to the CT scans conducted in 2015 to 2016 as merely background information.

Further, Plaintiff's tort claim form states that "FCI Elkton sent [him] to [the] Cleveland Clinic for examination," and that his injury is due to BOP "fail[ing] to follow the medical directives of the Cleveland Clinic." (Doc. No. 12-2, PageID # 74.) Plaintiff's Complaint confirms that his examination at the Cleveland Clinic took place on December 5, 2019. (Doc. No. 1 at 7.) Thus, Plaintiff's Administrative Claim relates solely to the action or inaction of the employees of FCI Elkton *after* his examination at the Cleveland Clinic. Plaintiff's administrative tort claim form makes no reference to FCI Milan whatsoever. Accordingly, the Court holds that Plaintiff has failed to administratively exhaust his claims regarding medical care provided at FCI Milan.

Plaintiff's argument that the Northeast Regional Office had a duty to inform him to file any negligent acts as to FCI Milan with the North Central Regional Office, or reject his tort claim form

altogether, is unavailing. In support of this argument, Plaintiff cites to 28 C.F.R. 14(2)(b)(1), which reads as follows:

> A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant. The fact of transfer shall not, in itself, preclude further transfer, return of the claim to the claimant or other appropriate disposition of the claim. A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency.

28 C.F.R. 14(2)(b)(1). Because Plaintiff's tort claim form does not identify nor reference any action or inaction on behalf of the staff at FCI Milan, the Bureau of Prisons' Northeast Regional Office was under no obligation to transfer the claim to any other office. Indeed, no other "proper agency [could] be identified from the claim." *See* 28 C.F.R. 14(2)(b)(1).

Plaintiff's argument also does nothing to change the Court's previous holding that Plaintiff is now time-barred from any attempt to administratively exhaust his claims against FCI Milan.

Under 28 U.S.C. § 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). A tort claim generally accrues on the date of injury. In medical malpractice cases, however, a claim accrues when the complainant knows of a) the injury and b) the injury's cause. *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013).

Plaintiff knew of his injury when he was examined at the Cleveland Clinic on December 5, 2019 (Doc. No. 1 at 7) and knew of the injury's alleged cause as of the date of his filing of his administrative tort claim form on October 15, 2020 (Doc. No. 12-2 at PageID # 74). Thus, more than two years have passed since Plaintiff had knowledge of his injury and filed his administrative tort

claim form. Plaintiff is now time-barred from any attempt to administratively exhaust his claims against FCI Milan.

Plaintiff cites to *Devbrow v. Kalu*, 705 F.3d 765, 769-770 (7th Cir. 2013) for the proposition that "when the violation of the plaintiff's constitutional rights is a continuing one, the statute of limitations does not start to run any earlier than the last day of the ongoing injury." *Id.* Relevant to Plaintiff's argument is the portion of *Deybrow* wherein the Seventh Circuit discussed its prior decision in *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir.2001). *Id.* In *Heard*, the plaintiff, an inmate at the Cook County jail, was refused treatment from jail officials for his ruptured hernia. 253 F.3d at 317. Once he was released from jail, the plaintiff sued the jail officials for deliberate indifference to his medical needs in violation of the Eighth Amendment. *Id.* The Seventh Circuit construed the plaintiff's claim as a "continuing violation" claim, explaining:

> A violation is called "continuing," signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. The injuries about which the plaintiff is complaining in this case are the consequence of a numerous and continuous series of events. . . . [I]n this case every day that the defendants ignored the plaintiff's request for treatment increased his pain. Not only would it be unreasonable to require him, as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after each of the earlier days of deliberate indifference; but it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them.

*Id.* at 319. Thus, "when the violation of the plaintiff's constitutional rights is a continuing one, the statute of limitations does not start to run any earlier than the last day of the ongoing injury." *Devbrow*, 705 F.3d at 770. In *Heard*, this meant that "the limitations period did not commence when the inmate first discovered his medical problem, but later, when his constitutional rights were last violated—that is, when he left the jail." *Id.* (citing *Heard*, 253 F.3d at 319-920).

7

Assuming *arguendo* that a continuing violation exists here, or in other words, that the staff at FCI Milan ignored Plaintiff's requests for medical attention from 2015 to 2017 (*see* Doc. No. 1 at 8), any continuing violation of Plaintiff's constitutional rights at FCI Milan ended when Plaintiff was no longer in the custody of FCI Milan.  *See Devbrow*, 705 F.3d at 770.  Thus, because Plaintiff was no longer in the care of FCI Milan once he was examined at the Cleveland Clinic on December 5, 2019 (and likely much earlier in 2017), the continuing violation doctrine does nothing to extend the applicable statute of limitations as to any claims against the staff at FCI Milan.  Rather, Plaintiff's claims against FCI Milan accrued when the staff at FCI Milan allegedly last refused him medical treatment—Plaintiff's last day in the custody of FCI Milan.  Because Plaintiff left the custody of FCI Milan more than two years ago, Plaintiff is time-barred from administratively exhausting his claims against FCI Milan.

Accordingly, to the extent Defendant moves to dismiss Plaintiff's allegations regarding the care provided at FCI Milan under Fed. R. Civ. P. 12(b)(1), Defendant's Motion is GRANTED.

I.      **Conclusion**

For the reasons set forth above and in this Court's Order and Opinion dated November 3, 2022 (Doc. No. 18), and supplemented herein, Defendant's Partial Motion to Dismiss (Doc. No. 12) is DENIED in part and GRANTED in part.  Plaintiff's allegations involving the care provided at FCI Milan are hereby dismissed.

**IT IS SO ORDERED.**

Date:  February 7, 2023

   s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE