IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **CAZEMBIE S. BASKIN,** | Case No. 1:22-CV-124 |
| Plaintiff, | |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | **MEMORANDUM OPINION & ORDER** |

This matter is before the Court upon the United States of America's Motion for Summary Judgment filed on June 3, 2024 ("Defendant's Motion"). (Doc. No. 42.) On June 27, 2024 Plaintiff Cazembie S. Baskin ("Plaintiff" or "Baskin") filed Plaintiff's Reply Brief as to Defendant's Motion ("Plaintiff's Opposition"). (Doc. No. 43.) On July 11, 2024, the United States filed a Reply in Support of Defendant's Motion ("Defendant's Reply"). (Doc. No. 44.) Upon careful review of the record and the parties' briefs, and for the reasons set forth below, the Court grants Defendant's Motion.

**Background**

The only claim that remains pending and that is the subject of Defendant's Motion is a medical malpractice or medical negligence claim under the Federal Tort Claims Act, specifically that the medical care for Plaintiff's polycystic liver disease and enlarged liver that he received while incarcerated at FCI Elkton fell below the standard of care.[1] On April 19, 2023 the Court appointed

---

[1] The "Procedural Background" set forth in Defendant's Motion, at pages 4 and 5 of its Brief in Support, is accurate and adopted as though fully rewritten herein and therefore, will not be repeated herein. (Doc. No. 42-1, PageID #s 308-09.)

pro bono counsel for Plaintiff, and it was after and because of the deposition testimony of Dr. David Kwon ("Dr. Kwon") given on January 29, 2024, that on February 16, 2024 a Joint Motion for Conference and to Stay Deadlines was filed and granted the same day; and that pro bono counsel sought leave to withdraw and was permitted to withdraw as counsel for Plaintiff. (Doc. Nos. 36, 37.) Despite having had counsel represent him for over nine months during which time frame the Court granted three extensions of the discovery deadlines—to include the production of expert report(s)—Plaintiff has failed to produce an expert report or any expert testimony to establish the standard of care for diagnosing and treating polycystic liver disease and enlarged liver, that FCI Elkton medical personnel breached the applicable standard of care, or that any alleged breach of the standard of care was the proximate cause of any injuries or damages claimed.

The undisputed evidence adduced while Plaintiff was represented by counsel demonstrates the following concerning Plaintiff's medical treatment while incarcerated at FCI Elkton. On August 7, 2019, Plaintiff saw Dr. Kathy McNutt at FCI Elkton complaining of episodic chest pain. (Doc. No. 42-2, PageID # 342.) At that time, Dr. McNutt was aware of the results of a chest CT scan for elevated hemi-diaphragm and an abdomen CT scan for numerous cysts and hemangioma Plaintiff had undergone in 2015. (*Id.*, PageID # 343.) Dr. McNutt testified that when she saw Plaintiff in August of 2019, Plaintiff having a cystic liver and hemangioma was not alarming; she was more concerned that Plaintiff might have a blood clot. (*Id.*, PageID # 344-45.) So, Dr. McNutt ordered an echocardiogram and, as reflected in an administrative note dated September 20, 2019, the echocardiogram showed a large mass on Plaintiff's right side and after also considering the 2015 CT scan that showed cysts, her plan was to have Plaintiff undergo advanced imaging. (*Id.*, PageID #s 346-47.) On October 16, 2019, Dr. McNutt discussed with Plaintiff the results of a pelvis and

abdomen CT scan that he had undergone on October 11, 2019 that showed a massive enlargement of Plaintiff's liver, and that his liver function tests were normal and there was no showing of liver failure. (*Id.*, PageID #s 348-49, 356-57.) Dr. McNutt was also aware of the results of the echocardiogram that showed a large mass up against Plaintiff's atrium. (*Id.*) After discussing the CT results with Dr. Woods at Trumbull Hospital who suggested to her that Plaintiff see a specialist at the Cleveland Clinic, Dr. McNutt referred Plaintiff to a specialist at the Cleveland Clinic. (*Id.*, PageID #s 353-54.)

On October 29, 2019, Plaintiff saw gastroenterology Physician Assistant Sara Krajewski ("P.A. Krajewski") at the Cleveland Clinic who reviewed the imaging and noted Plaintiff's symptoms of intermittent discomfort, pain, and shortness of breath. There were no signs of cirrhosis. (*Id.*, PageID #s 355-56.) P.A. Krajewski recommended blood work and an MRI. (*Id.*, PageID # 357-58.) The MRI was performed on December 5, 2019 and during Plaintiff's December 6, 2019 visit, P.A. Krajewski advised Plaintiff that the MRI showed enlarged polycystic liver with few bilateral renal cysts and cystic liver compatible with polycystic liver disease. She recommended a consultation with a liver surgeon for resection of larger cysts. (*Id.*, PageID #s 358-61.)

Given scheduling issues associated with dealing with COVID, Plaintiff was finally able to see Dr. Kwon with the Cleveland Clinic for an assessment on June 11, 2020. (*Id.*, PageID # 366.) Dr. Kwon is an expert in liver surgery and living donor liver transplants and was the Director of Laparoscopic Liver Surgery and now Director of Minimally Invasive Surgery at the Cleveland Clinic. (Doc. No. 42-5, PageID #s 428-29.) Dr. Kwon noted that Plaintiff had polycystic liver disease; his cysts were medium-sized and equally distributed bilaterally without any overly enlarged cyst, so cyst unroofing was not indicated; the other treatment option was a liver transplant, but it should be considered when the symptoms are debilitating as to hinder normal life, which did not correspond to

3

Plaintiff; and no further surveillance was needed until otherwise indicated. (Doc. No. 42-4.) Dr. Kwon testified that polycystic liver disease is a genetic disorder that can cause an enlarged liver and it "does not occur because of mismanagement; it does not occur because treatment was not done. It's just you are born with it." (Doc. No. 42-5, PageID #466.) When asked whether Plaintiff's allegation that he has polycystic liver disease because the Bureau of Prisons had failed to treat his enlarged liver is supported by medical research, Dr. Kwon responded "no." (*Id.*, PageID # 465.) After evaluating Plaintiff, Dr. Kwon determined that Plaintiff was not a candidate for surgery, there were no prescription medications that could have been prescribed to manage Plaintiff's condition, no additional imaging or monitoring was required, and the only course of treatment for FCI Elkton to follow would be to rely on Plaintiff to report new or worsening symptoms. (*Id.*, PageID #s 482-85.)

Again, the record reflects that Plaintiff did not produce any report(s) setting forth an expert opinion detailing the standard of care for treating Plaintiff's conditions, FCI Elkton medical personnel's breach thereof, or that any such breach proximately caused Plaintiff's alleged injuries.

### **Standard of Review**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004)). "Thus, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

A fact is "material" only "if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson*, 469 F.3d at 487 (citing Hedrick, 355 F.3d at 451).

At the summary judgment stage, "[a] court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 628 (6th Cir. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[T]he moving party bears the initial burden of showing that there is no genuine dispute of material fact." *Ask Chems., LP v. Comput. Packages, Inc.*, 593 F. App'x 506, 508 (6th Cir. 2014) (citing *Anderson*, 477 U.S. at 256). The moving party may satisfy this initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986)). "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial," the moving party may also "meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Celotex*, 477 U.S. at 325).

Once the moving party satisfies its burden, "the burden shifts to the non-moving party who must then point to evidence that demonstrates that there is a genuine dispute of material fact for trial." *Ask Chems.*, 593 F. App'x at 508-09 (citing *Anderson*, 477 U.S. at 256). "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'" *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F. Supp. 3d 731, 736 (N.D. Ohio 2015) (quoting *Cox*, 53 F.3d at 150).

**Analysis**

Defendant is seeking summary judgment on an issue for which it does not bear the burden of proof at trial, i.e., that Plaintiff's treatment for his polycystic liver disease while at FCI Elkton fell below the standard of care. Defendant has met its initial burden by showing that there is an absence of evidence to support Plaintiff's claim, i.e., an expert opinion demonstrating that the treatment Plaintiff received at FCI Elkton fell below the appropriate standard of care recognized by the relevant medical community and that such failure caused Plaintiff injuries. Since Plaintiff has not come forward with any competent or admissible evidence to demonstrate otherwise,[2] summary judgment in favor of Defendant is warranted.

Liability in suits for alleged medical malpractice or medical negligence under the FTCA are "determined by reference to the law of the state where the alleged medical malpractice or negligence occurred." *Lyons v. Brandly*, 430 F. App'x 377, 381 (6th Cir. 2011) (citing 28 U.S.C. § 1346(b) and *Flechsig v. United States*, 991 F.3d 300, 303-04 (6th Cir. 1993)). Since Plaintiff claims that it was while incarcerated at FCI Elkton in Ohio that he suffered injuries and damages as a result of medical malpractice/negligence, Plaintiff must prove, by a preponderance of the evidence and generally through expert testimony, that the medical providers at FCI Elkton failed to adhere to the appropriate standard of care recognized by the relevant medical community and that such failure caused him injury. *Lyons*, at 381 (citing *Bruni v. Tatsumi*, 346 N.E.2d 673, 677-78 (Ohio 1976)). Plaintiff carries

---

[2] As the United States correctly points out, the medical articles from various websites attached to and discussed in Plaintiff's Opposition are inadmissible hearsay, citing Fed. R. Evid. 801(c) and 802. And, while the United States acknowledges that the articles could be considered as learned treatises, it correctly argues that since they have not been authenticated as reliable by an expert witness, they have not been produced in discovery, and they have not been verified or authenticated, they are not sufficient or admissible to avoid summary judgment. *Stevenson v. Prettyman*, 951 N.E.2d 794, 799 (Ohio Ct. App. 2011); *Fisher v. Alliance Machine*, 947 N.E.2d 1308 1315-16 (Ohio Ct. App. 2011).

the burden of proof to establish that he can maintain a viable medical malpractice/negligence claim under Ohio law. *Young v United States*, 71 F.3d 1238, 1244 (6th Cir. 1995); *Richards v. United States*, 369 U.S. 1, 11 (1962).

Under Ohio law, to assert a *prima facie* case of medical malpractice, an expert report is required to explain the applicable standard of care recognized by the medical community and to demonstrate a departure from the accepted standard of care. *Mooney v. Cleveland Clinic Found.*, 65 F. Supp. 2d 682, 684-85 (N.D. Ohio 1999), *aff'd*, 221 F.3d 1335 (6th Cir. 2000) (citing *Bruni*, 346 N.E.2d at 677-78); *Radous v. Emeritus Corp.*, No. 1:12-CV-319, 2013 WL 1283903, at *2 (N.D. Ohio Mar. 27, 2013); Fed. R. Civ. P. 26(a)(2)(B). Also, the establishment of proximate cause must ordinarily be accomplished through the testimony of a physician or other expert competent to testify. *Shumaker v Oliver B. Cannon & Sons, Inc.*, 504 N.E.2d 44, 46 (1986). The Sixth Circuit has applied this expert testimony requirement to suits under the FTCA. *Estate of Rodriguez v. United States*, No. 13-01559, 2017 WL 1283072, at *3 (N.D. Ohio Apr. 6, 2017); *Briach v. Louis Stokes V.A. Lorain & Cuyahoga Wade Park*, No. 1:12-CV-01677, 2013 WL 2367827, at *2 (N.D. Ohio May 29, 2013).

It is true, as the United States recognizes and Plaintiff asserts, that experts are not required in the limited exception where the "lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it." *Bruni*, 346 N.E.2d at 677. However, contrary to Plaintiff's argument, the "common knowledge" exception to the rule requiring an expert report in lawsuits alleging medical malpractice or negligence does not apply here. Determining the standard of care involved in diagnosing and treating polycystic liver disease and an enlarged liver, any breach of that standard of

care and whether any such breach proximately caused a plaintiff's injuries are all well beyond the common knowledge of laymen.

The cases cited and relied upon or discussed by Baskin in Plaintiff's Opposition are distinguishable, inapplicable and/or not binding upon this Court. This Court is bound by Ohio law and Sixth Circuit precedent applying the Ohio rule requiring an expert report/expert testimony in the context of medical malpractice/negligence claims brought under the FTCA.

Accordingly, Defendant's Motion is well-taken and GRANTED.

**IT IS SO ORDERED.**

                                               *s/Pamela A. Barker*
                                               PAMELA A. BARKER
Date: August 20, 2024                       U. S. DISTRICT JUDGE